CHANEY ET AL., APPELLANTS, *v.*
VILLAGE OF LORDSTOWN ET AL.,
APPELLEES.

(No. 3359—Decided December 3, 1984.)

*Theodore T. Ivanchak,* for appellants.

*Edward L. Lavelle,* for appellee village of Lordstown.

COOK, P.J. On February 22, 1983, the Lordstown Village Council passed Ordinance No. 6-83 which authorized the mayor and clerk to enter into a contract with Joseph Busch for architectural services for a planned addition to the administrative building. Busch was to receive $16,635 for his services. He was also hired to serve as a construction manager on the project for which he was to receive five percent of the cost of the project.

The council let the proposed building addition for bidding in July 1983. Bids were opened on August 19, 1983. Ordinance No. 44-83, which accepted the various bids and authorized the mayor and clerk to enter into contracts with the low bidders, had a first reading on August 24, 1983, a second reading on August 25, 1983, and was finally passed as an emergency measure on September 6, 1983. On September 6, 1983, before Ordinance No. 44-83 was passed, the ordinance was amended to delete an energy alternative bid of approximately $10,000 from the project.

On October 6, 1983, the village entered into contracts with ten contractors pursuant to Ordinance No. 44-83. The total costs of the contracts was $320,711.70. Work began on the project.

On October 21, 1983, Glen Chaney, a taxpayer of the village of Lordstown, filed a taxpayer's action against the village of Lordstown, its administrative officials, its council, Joseph Busch & Associates, and Kreidler Construction Company to halt construction of the project and to obtain a declaratory judgment. He alleged the expenditure "was an illegal expenditure of public funds and a misapplication of the Village revenue." On November 10, 1983, the trial court entered judgment for the village of Lordstown et al.

Glen Chaney has filed an appeal from the judgment of the trial court and has filed the following four assignments of error:

"1. The trial court erred by not declaring the plans and specifications and bidding procedures void from failure of the defendants-appellees to comply with Ohio Revised Code section 153.12.

"2. The trial court erred in finding that the contracts entered into were valid and binding since the aggregate costs of all contracts exceeded ten percent (10%) of the estimated costs.

"3. The trial court erred in concluding that the deletion of the energy management alternative by the Village of Lordstown was not illegal, or a material or substantial change of the project, since the energy management alternative materially inflated the estimate and frustrated the intent of Ohio Revised Code Section 153.12.

"4. The trial court erred by not finding that the ordinance in question, 44-83, was invalid for failure to receive three (3) readings as required by law."

The assigned errors are without merit.

Chaney's first contention is that the original plans and specifications did not include an estimate of the costs of the project as required by R.C. 153.12.

R.C. 153.12, in pertinent part, provides:

"(A)  * * * The public owners referred to in this section shall include, in the plans and specifications for the project for which bids are solicited, the estimate of cost. * * *"

It is clear that the original plans and specifications contained no estimate of cost. However, on August 16, 1983, an addendum was attached to the original plans which advised all bidders to refer to the Dodge Reports and Construction Bulletin for further information concerning the project. The Dodge Reports contained a cost estimate of $300,000 for the project.

Since this information was furnished to all prospective bidders prior to the date their bids were required, we conclude there was substantial compliance with R.C. 153.12.

Chaney next contends the contracts entered into by the village were invalid since the aggregate cost of all the contracts entered into exceeded one hundred and ten percent of the estimated cost in violation of R.C. 153.12.

That portion of R.C. 153.12 which is pertinent to Chaney's second contention reads:

"(A)  * * * The public owners referred to in this section shall include, in the plans and specifications for the project for which bids are solicited, the estimate of cost. * * * No contract to which this section applies shall be entered into if the price of the contract, or, if the project involves multiple contracts where the total price of all contracts for the project, is in excess of ten per cent above the entire estimate thereof, nor shall the entire cost of the construction, reconstruction, repair, painting, decorating, improvement, alteration, addition, or installation, including changes and estimates of expenses for architects or engineers, exceed in the aggregate the amount authorized by law."

Chaney argues that the cost of the management fee of Joseph Busch & Associates should be included in the "total price of all contracts for the project." If said management fee was so included, the cost of the project would be in excess of the ten percent limitation set forth in R.C. 153.12.

However, R.C. 153.12 provides for a limitation of ten percent over the estimated cost of a project "for which bids are solicited." The contract with Joseph Busch for services as a construction manager was not subject to bidding. *State, ex rel. Doria,* v. *Ferguson* (1945), 145 Ohio St. 12 [30 O.O. 241]; 21 Ohio Jurisprudence 3d (1980), Counties, Townships, and Municipal Corporations, Section 822.

We conclude the amount of the contract of the village of Lordstown with Joseph Busch for construction management should not be included within the "total price of all contracts for the project." Therefore, all the contracts for the project did not exceed one hundred ten percent of the estimated cost of the project.

Third, Chaney argues that the deletion of the energy management alternative was illegal. He contends the deletion "frustrated the intent of R.C. 153.12."

However, the energy management alternative was an optional inclusion in the plans and specifications. The cost of said alternative was not included, according to Joseph Busch, in the $300,000 estimate of the cost of the project. Since the energy management

alternative's estimated cost was not included in the total estimate for the project, its deletion, on September 6, 1983, from the plans and specifications for the project had no effect on any calculation as to any coverage as to the ten percent limitation set forth in R.C. 153.12.

Last, Chaney contends Ordinance No. 44-83 is invalid for failure to receive three readings as required by law. Since the parties stipulated Ordinance No. 44-83 was passed as an emergency measure on September 6, 1983 "after a third reading," we conclude the assigned error is not demonstrated by the record.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

DAHLING and FORD, JJ., concur.